**Paul F. ROSSITER, Plaintiff,**

v.

**John E. POTTER, Postmaster General, and United States Postal Service, Defendants.**

**No. CIV.A. 02–12192–WGY.**

United States District Court, D. Massachusetts.

May 16, 2003.

**22.** *Id.* at § 3(a).

Richard C. Biller, Sean T. Goguen, Goguen, McLaughlin, Richards & Mahaney, LLP, South Natick, MA, for Paul L. Rossiter, Plaintiff.

Christopher R. Donato, United States Attorney's Office, Boston, MA, for John E. Potter, Postmaster General, United States Postal Service, Defendants.

*MEMORANDUM AND ORDER*

YOUNG, Chief Judge.

## I. INTRODUCTION

The plaintiff, Paul Rossiter ("Rossiter"), brings claims under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 *et. seq.,* and Mass. Gen. Laws Ch. 151B, against defendants Postmaster General John Potter ("Potter") and the United States Postal Service (the "Postal Service") (collectively, the "Defendants"). Rossiter, who was 46 years old when the Postal Service declined to offer him employment, alleges that he was discriminated against on account of his age.

The Defendants have moved to dismiss Rossiter's claims under the ADEA on the grounds that they are time-barred and have moved to dismiss his Chapter 151B claims on the grounds that the ADEA provides the exclusive remedy for federal employees alleging age discrimination. Although it is clear that Rossiter's Chapter 151B claims are indeed preempted, the determination of the applicable statute of limitations for Rossiter's federal claims under the ADEA raises a more complex issue.

### A. Facts

The following facts may be gleaned from Rossiter's complaint and are presumed true for the purposes of the instant motion.

In April 2000, Rossiter took and passed the Postal Service's written exam. Compl. [Docket No. 1] ¶ 6. On or about September 22, 2000, he passed a required drug test. *Id.* ¶ 7. In December 2000, Rossiter interviewed with Steve Froio ("Froio"), an Operations Manager with the Postal Service, for a letter carrier position. *Id.* ¶¶ 8–9. Rossiter believed that the interview went well and expected to be hired. *Id.* ¶ 9.

On or about January 4, 2001, the Postal Service sent Rossiter—who was forty-six years old at that point—a letter informing him that he had not been hired. *Id.* ¶¶ 10, 16. On or about January 29, 2001, Rossiter spoke with Froio, who allegedly told Rossiter that he had not been hired because he seemed nervous during the interview and did not make eye contact. *Id.* ¶ 12. According to Rossiter, Froio went on to state, "[i]f you were 20 years younger, being nervous would have been acceptable, but not with 20 years of service." When Rossiter stated that he thought he was being denied the job because of his age, Froio allegedly responded, "[i]t didn't help you any." *Id.* Rossiter asked Froio if he could be reconsidered for a letter carri-

er position, but Froio responded that no jobs were available. Shortly thereafter, Rossiter received a mailing announcing that the Postal Service was still seeking to hire letter carriers. *Id.* ¶ 13.

On or about February 14, 2001, Rossiter requested an appointment with an Equal Employment Opportunity Commission ("Commission") counselor regarding his non-selection for employment at the Postal Service. Def.s' Mem. [Docket No. 4] at 2.[1] On or about February 24, 2001, Rossiter completed and submitted an informal complaint by completing an "Information for Precomplaint Counseling" form. *Id.* On or about April 11, 2001, Rossiter agreed to attempt mediation, which took place on May 21, 2001. *Id.* No resolution was reached at the mediation and on July 26, 2001, Rossiter filed his notice of intent to sue with the Commission. *Id.* at 2–3.

### B. Procedural Posture

On November 8, 2002—one year and 105 days after filing his Notice of Intent to Sue—Rossiter filed the instant complaint in this Court. In his complaint, Rossiter brought (1) a claim against Potter under the ADEA [Count One]; (2) a claim against Potter under Chapter 151B [Count Two]; (3) a claim against the Postal Service under the ADEA [Count Three]; and (4) a claim against the Postal Service under Chapter 151B [Count Four].

The Defendants subsequently filed the instant motion to dismiss [Docket No. 3], alleging that the statute of limitations had run on Rossiter's claim under the ADEA and that Rossiter's Chapter 151B claims were preempted. The Court held a hear-

ing on the Defendants' motion on May 5, 2003.

■ At the hearing, Rossiter did not contest that his Chapter 151B claims were preempted. Indeed, the case law is clear that the ADEA provides the exclusive remedy for federal employees alleging age discrimination, preempting all other claims whether based on federal, state, or common law. *Kersey v. Widnall,* No. CIV. A.97–10464-GAO, 1998 WL 151232, at *4 (D.Mass. March 12, 1998) (O'Toole, J.) (unpublished opinion), *aff'd,* 201 F.3d 427, 1998 WL 1247118 (1st Cir.1998) (unpublished opinion). The question of whether Rossiter's claims under the Act are time-barred, however, was very much in dispute at the hearing, and the Court took the issue under advisement.

## II. DISCUSSION

### A. Standard of Review

In ruling on a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff; dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must take the well-pleaded facts as they appear in the complaint, extending the plaintiff every reasonable inference in his favor. *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990).

### B. Are Rossiter's ADEA Claims Time–Barred?

Whether Rossiter's ADEA claims are time-barred is a complex question that re-

---

**1.** Rossiter's own complaint includes no facts subsequent to his conversation with Froio and his receipt, shortly thereafter, of a mailing indicating that the Postal Service was still seeking letter carriers. Rossiter has not disputed, however, that the subsequent events

occurred. In fact, had Rossiter *not* filed his notice of intent to sue with the Commission, he would not be able to bring this action in federal court. 29 U.S.C. § 633a(d) (2000); *see infra* pp. 443–444.

quires some introduction. As a starting point, a federal employee may take one of two routes when choosing to pursue an ADEA claim against the government.

First, the federal employee may seek resolution through the Commission administrative process, filing an action in federal court only if unsatisfied with the results obtained from the Commission. 29 U.S.C. § 633a(b) (2000). The ADEA does not set forth a statute of limitations with respect to how much time a plaintiff has, subsequent to an adverse agency decision, to file suit in federal court. As such, courts have "borrowed" statutes of limitations from other analogous statutes—frequently, Title VII. Indeed, in 1990, the First Circuit ruled in *Lavery v. Marsh* that the appropriate statute of limitations in ADEA cases where the federal employee first pursues agency relief is "the same as that for claims pursuant to Title VII of the Civil Rights Act—thirty days [now ninety days, pursuant to an amendment in Title VII] following receipt of the final administrative order." 918 F.2d 1022, 1024 (1st Cir.1990). The *Lavery* court reasoned that:

> "[t]he ADEA and Title VII share a common purpose, the elimination of discrimination in the workplace ...." In fact, the ADEA amendment prohibiting federal-sector age discrimination was patterned after 42 U.S.C. § 2000e–16(a), (b), the amendments to Title VII extending that statute's protection to federal employees. The federal employment age discrimination amendment was thus intended to be " 'substantially similar

to' " the federal workplace counterpart in Title VII.

*Id.* at 1025 (internal citations omitted).

In the alternative, a federal employee may—as did Rossiter—bypass the Commission and bring suit directly in federal court. 29 U.S.C. § 633a(c) (2000).[2] Here, too, the ADEA does not set forth explicitly a statute of limitations. The ADEA simply provides that the employee must file notice of an intent to sue with the Commission within 180 days after the alleged unlawful practice occurs and then must wait *at least* thirty days after filing the notice to file suit. 29 U.S.C. § 633a(d) (2000). The ADEA does not impose a limitation on how long *after* the expiration of the 30 day period the employee has to sue. Despite this statutory language, some courts originally interpreted the ADEA to mean that the employee pursuing the second route, that is, suing directly in federal court, had to file suit *within* thirty days of giving notice to the Commission, just as required by Title VII.[3] The Supreme Court corrected this erroneous interpretation in *Stevens v. Department of Treasury,* noting that the lower courts had erred in holding "that the federal litigation had to be commenced *within* 30 days of the notice, instead of *after* 30 days from the notice," and the Court stated that:

> The applicable regulations are positive as to the absence of such a "within 30 days" requirement under the ADEA, in marked contrast with the situation concerning the assertion of a Title VII claim.... The statute does not express-

---

**2.** By contrast, non-federal employees *must* first exhaust their administrative remedies. 29 U.S.C. § 626(d) (2000); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d 683, 686 (2d Cir.2001) ("Under both Title VII and the ADEA, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter.").

**3.** This interpretation was consonant with Title VII's rule that a federal employee must file suit within thirty days (since amended to ninety days) of an adverse agency decision. 42 U.S.C. § 2000e–16(c) (2000).

ly impose any additional limitations period for a complaint of age discrimination. We therefore assume, as we have before, that Congress intended to impose an appropriate period borrowed from a state statute or from an analogous federal one. In this case, we need not decide which limitations period is applicable to a civil action under 29 U.S.C. § 633a(c). Stevens filed his suit on May 3, 1988, only one year and six days after the allegedly discriminatory event of April 27, 1987. That, as respondents acknowledge, Brief for Respondents 30, "is well within whatever statute of limitations might apply to the action."

500 U.S. 1, 7–8, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991) (internal citations omitted).

*Stevens* thus left unanswered how much time an employee pursuing the second route (direct suit in federal court) has to file suit after he has notified the Commission of his intent to do so: thirty days is the minimum, but what is the maximum? The only court to address this specific question—namely, the statute of limitations for federal employees who go straight to federal court—has been the Eleventh Circuit. In *Edwards v. Shalala,* the Eleventh Circuit held that, once the thirty days have elapsed after the employee's filing of his notice of intent to sue with the Commission, a new thirty-day statute of limitations begins running (commensurate with Title VII), yielding an ultimate sixty-day statute of limitations. 64 F.3d 601, 605–606 (11th Cir.1995). As noted above, Title VII's statute of limitations has since been amended to ninety days. Presumably, therefore, the Eleventh Circuit's current approach would require federal employees who sue directly in federal court to notify the Commission and then wait thirty days, at which point they have another ninety days to file suit. In other words, in the Eleventh Circuit, the effec-

tive statute of limitations is 120 days after notice is filed with the Commission. The Defendants urge this Court to adopt this approach as well, pointing out that other circuits have continued to borrow Title VII's statute of limitations with respect to employees who pursue the first route, that is, those who first exhaust administrative remedies. Def.s' Mem. at 6.

*Stevens* does not implicate the borrowing of Title VII's statute of limitations for federal employees who pursue the first route of exhausting their administrative remedies before filing suit. *Stevens* does, however, implicate the second route—whereby employees sue directly in federal court—given that it arose precisely in that context. Indeed, the wrinkle in the Eleventh Circuit's post-*Stevens* approach of borrowing Title VII's statute of limitations with respect to employees who sue directly in federal court is the Supreme Court's statement that "Stevens filed his suit on May 3, 1988, only one year and six days after the allegedly *discriminatory event* of April 27, 1987. *That, as respondents acknowledge, Brief for Respondents 30, 'is well within whatever statute of limitations might apply to the action'." Stevens,* 500 U.S. at 8, 111 S.Ct. 1562 (emphasis added).

It is not clear whether, in making the above statement, the Supreme Court was simply declining to address the issue in the face of the parties' agreement that the statute of limitations had not run or was actually expressing its *own* view that the statute of limitations had not run. If the former holds, no inconsistency exists between *Stevens* and the Eleventh Circuit's approach, which was articulated several years after *Stevens.* But if the Supreme Court was indeed agreeing that the statute of limitations had not run, a real concern emerges with respect to using the Eleventh Circuit's approach because, if its ap-

proach had been used, Stevens' suit would *not* have been timely. Stevens notified the Commission of his intent to sue on October 19, 1987, and did not then file suit until May 3, 1988 (approximately six-and-a-half months, or over 180 days, later). *Id.* at 4, 111 S.Ct. 1562. This would not satisfy the statute of limitations adopted by the Eleventh Circuit in *Edwards* (sixty days after filing notice with Commission, pursuant to Title VII's thirty-day statute of limitations), or even the presumably updated approach to take account of Title VII's extension of the statute of limitations (120 days after filing notice with the Commission, pursuant to Title VII's ninety-day statute of limitations). In short, there may well be a real conflict between the Supreme Court's statement in *Stevens* and the Eleventh Circuit's subsequent approach that utilizes Title VII's statute of limitations for employees who go directly to federal court.[4] The Defendants' reference to various courts that have used Title VII's statute of limitations for employees who first pursue administrative remedies, Def.s' Mem. at 6, is not particularly relevant because *Stevens* did not cast doubt on that practice in the same way that it cast doubt on the practice of using Title VII's statute of limitations for employees who go directly to federal court.

Indeed, Rossiter makes a good argument that Title VII—which imposes a requirement of the exhaustion of administrative remedies—is not an ideal source from which to borrow with respect to federal employees, suing under the ADEA, who do not exhaust their administrative remedies. Pl.'s Opp'n [Docket No. 7] at 7–8. This conclusion does not contradict the First Circuit precedent of *Lavery*, which specifically addressed federal employees suing

under the ADEA who had first exhausted their administrative remedies.

■ Of course, it is possible that the Supreme Court's statement in *Stevens* merely constituted an ambiguous effort to avoid the issue altogether. After careful consideration, the Court concludes that the most prudent approach is to attempt to reconcile the Eleventh Circuit's approach with the relevant dicta in *Stevens*. That is, the Court rules that the statute of limitations under the ADEA for federal employees such as Rossiter who go directly to federal court is the *longer* of (a) 120 days after filing notice with the Commission (the statutory thirty-day waiting period plus Title VII's ninety-day limitations period) or (b) one year and six days after the alleged discriminatory incident, pursuant to the Supreme Court's statement in *Stevens*. If the employee can satisfy either of these statutes of limitations, his claim shall not be deemed time-barred. The Court believes that this approach balances due deference to the First Circuit's holding in *Lavery* that Title VII is the most analogous statute to the ADEA, 918 F.2d at 1025, with fidelity to the Supreme Court's suggestion in *Stevens* that a plaintiff filing suit one year and six days after the discriminatory event occurred would be "well within" any applicable statute of limitations. 500 U.S. at 8, 111 S.Ct. 1562.

This approach leads directly to the conclusion that Rossiter's action is indeed time-barred. Well over 120 days (to be exact, 470 days) elapsed between Rossiter's filing of his intent of notice to sue on July 26, 2001 and his filing of the instant complaint on November 8, 2002, *and* well over one year and six days (to be exact,

---

4. The *Edwards* court did not identify this conflict and simply stated that the Supreme Court "did not have to address this issue in *Stevens* because the federal employee's suit

was filed within one year and six days after the alleged discrimination, well within whatever statute of limitations might have applied." *Edwards*, 64 F.3d at 604.

one year and 309 days) elapsed between the alleged discrimination, that is, Rossiter's failure to be hired on January 4, 2001, and his filing of the instant complaint on November 8, 2002. Thus, under either alternative set forth above, Rossiter's claims under the ADEA are time-barred.

### III. CONCLUSION

Accordingly, the Defendants' Motion to Dismiss [Docket No. 3] is ALLOWED.

SO ORDERED.