# United States Court of Appeals

## For the First Circuit

---

No. 03-1860

PAUL L. ROSSITER,

Plaintiff, Appellant,

v.

JOHN E. POTTER, AS POSTMASTER GENERAL,
AND UNITED STATES POSTAL SERVICE,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

---

Before

Selya, Circuit Judge,
Cyr, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

Richard C. Biller, with whom Goguen, McLaughlin, Richards &
Mahaney, LLP was on brief, for appellant.
Christopher R. Donato, Assistant United States Attorney, with
whom Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

---

January 27, 2004

---

**SELYA**, **Circuit Judge**.    This appeal involves a unique provision of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634.  A federal employee or a disappointed applicant for federal employment — we use the term "federal employee" throughout this opinion as a shorthand to cover both classes of persons — who wishes to pursue an ADEA claim has a right, not available to other ADEA claimants, to bypass the administrative process and go directly to a federal district court.  See id. § 633a(c)-(d).  The sole issue to be decided in this appeal concerns the limitations period that applies to such actions.

         The only appellate court to have addressed this issue thus far chose to borrow the limitations period used for Title VII actions.  See Edwards v. Shalala, 64 F.3d 601, 606 (11th Cir. 1995) (citing 42 U.S.C. § 20000e-16(c)).  Reluctant though we are to create a circuit split, we part company with the Edwards court and hold that when a federal employee opts to bypass the administrative process and pursue an ADEA claim directly in the district court, the applicable limitations period should be borrowed from the Fair Labor Standards Act (FLSA), 29 U.S.C. § 255(a).  That period, which extends for at least two years from the date of the allegedly discriminatory act or practice, is longer than either the 90-day limitations period contained in Title VII or the hybrid period fashioned by the lower court.  See Rossiter v. Potter, 257 F. Supp.

-2-

2d 440, 445 (D. Mass. 2003).[1]  Accordingly, we reverse the order
dismissing the plaintiff's complaint as time-barred and remand for
further proceedings.

## I.

## Background

Since this appeal deals primarily with matters of timing,
a thumbnail sketch of the facts will suffice.  We draw that sketch
mindful that an appellate court reviews a dismissal for failure to
state a claim de novo, applying the same legal standards that bind
the trial court.  Banco Santander v. López-Stubbe (In re Colonial
Mortgage Bankers Corp.), 324 F.3d 12, 15 (1st Cir. 2003).
Consequently, we assume the truth of all well-pleaded facts
contained in the complaint and indulge all reasonable inferences
therefrom to the plaintiff's behoof.  Id.

In or around 2000, plaintiff-appellant Paul Rossiter
sought employment with the United States Postal Service (USPS).
After passing the USPS's preliminary screens (including a written
examination and a drug test), Rossiter was interviewed by Steve

---

[1]The district court, in a failed attempt to reconcile Edwards
with pertinent Supreme Court precedent, devised a complicated
algorithm.  It concluded that "the statute of limitations under the
ADEA for federal employees such as Rossiter who go directly to
federal court is the longer of (a) 120 days after filing notice
with the [Equal Employment Opportunity] Commission (the statutory
thirty-day waiting period plus Title VII's ninety-day limitations
period) or (b) one year and six days after the alleged
discriminatory incident, pursuant to the Supreme Court's statement
in Stevens [v. Dep't of Treasury, 500 U.S. 1 (1991)]."  Rossiter,
257 F. Supp. 2d at 445.

Froio, a USPS hierarch. Although Rossiter had 20 years of experience in the service industry, the USPS refrained from contacting any of his references. This did not bode well for Rossiter's prospects, and in early January he received a letter stating that he would not be hired.

Rossiter pursued the matter. On January 29, 2001, Froio told him that he had been rejected because he seemed nervous during the interview. Froio added that "[i]f [Rossiter] were 20 years younger, being nervous would have been acceptable." When Rossiter suggested that he was being denied employment on account of his age, Froio replied: "It didn't help you any." Rossiter requested that his application be reconsidered, but Froio told him that reconsideration was impracticable as no more positions were available. Less than ten days later, however, Rossiter received correspondence announcing that the USPS was still seeking to hire people in the job category for which he had unsuccessfully applied.

At age 46, Rossiter was a member of the class protected by the ADEA. See 29 U.S.C. § 633a(a). Convinced that he had been denied employment by reason of age discrimination, he contacted the Equal Employment Opportunity Commission (EEOC) in mid-February. Following an initial meeting, Rossiter submitted an informal complaint. He later agreed to participate in mediation, which took place on May 21, 2001. Nothing was resolved.

On July 26, 2001, Rossiter filed a notice of intent to sue with the EEOC. From that point forward, the matter lay fallow until November 28, 2002. Rossiter then filed a civil action in the United States District Court for the District of Massachusetts against the Postmaster General and the USPS. In it, he alleged violations of the ADEA and its state counterpart, Mass. Gen. Laws ch. 151B, § 4(1). The defendants (collectively, the government) moved to dismiss the action, arguing (i) that the state-law claim was preempted by the ADEA, and (ii) that the ADEA claim was time-barred.

Rossiter did not contest the preemption argument, and the district court dismissed the state-law claim. Rossiter's ADEA claim proved to be a knottier problem. The district court took this aspect of the case under advisement and ultimately ruled, in a written rescript, that the claim was time-barred. Rossiter, 257 F. Supp. 2d at 445. This appeal ensued.

## II.

## Discussion

The path that we must travel has been well-marked. When Congress creates a cause of action but is silent as to the limitations period that should apply to the right created — as is the case in 29 U.S.C. § 633a — the judicial task is to borrow the most appropriate rule of timeliness from some other source. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 158 (1983).

-5-

After careful review of the evolution of the ADEA and its various enforcement schemes, we conclude that the FLSA provides the most analogous rule of timeliness for ADEA actions brought by federal employees who opt to bypass the administrative process.

## A.

## A Guide to the Statutory Scheme

Every journey is best understood if it begins with a roadmap. Congress passed the ADEA with a view toward ending workplace discrimination based on age. As originally enacted in 1967, the statute reached only private employers. See Pub. L. No. 90-202, § 11(b), 81 Stat. 602 (1967); see also Lehman v. Nakshian, 453 U.S. 156, 166 (1981). Seven years later, Congress elongated the ADEA's reach to include governmental employers (federal, state, and local). See Pub. L. No. 93-259, § 28, 88 Stat. 55 (1974); see also Nakshian, 453 U.S. at 166. To accomplish this augmentation, Congress broadened the ADEA's stock definition of "employer" to include state and local governments, thereby subjecting such employers to the enforcement mechanisms contained in the general statutory scheme. See Pub. L. No. 93-259, § 28(a)(2), 88 Stat. 55 (1974); see also Nakshian, 453 U.S. at 166. Federal employers, however, were treated differently: they were added in an entirely new and distinct statutory section — one that contained its own enforcement mechanisms. See Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, § 28(b), 88 Stat. 74, codified at 29

U.S.C. § 633a; see also Nakshian, 453 U.S. at 166. This dichotomy persists.

The general provisions of the ADEA (applicable to private employers and to state and local governments) originally embodied an enforcement scheme that resembled the FLSA's. See Lavery v. Marsh, 918 F.2d 1022, 1024 (1st Cir. 1990). This included incorporation of the FLSA's statute of limitations. 29 U.S.C. § 626(e) (amended 1991) (incorporating by reference 29 U.S.C. § 255). The FLSA model set a limitations period of two years after the date of injury for general violations and three years for willful violations. See id. § 255(a).

In 1991, Congress removed the FLSA's incorporated statute of limitations from this portion of the ADEA and inserted a limitations scheme akin to that governing Title VII actions. See Civil Rights Act of 1991, Pub. L. No. 102-166, § 115, 105 Stat. 1071, 1079, codified as amended at 29 U.S.C. § 626(e). Under this reconstructed framework, there is no external requirement that a federal civil action predicated on an ADEA violation be filed within a specified time following the date of the discriminatory act or practice; rather, the applicable timing requirements relate to, and derive from, the administrative process. An employee must file an administrative complaint within 180 days of the alleged discrimination in order to preserve his or her claim. 29 U.S.C. § 626(d)(1). This filing vivifies the administrative process, and

the date of injury has no further bearing on the question of timeliness. The applicable limitations period begins to run at the end of the administrative process: from that point, the employee has 90 days within which to bring suit. Id. § 626(e).

The legislative scheme for ADEA claims brought by federal employees is materially different. Congress provided dual means of enforcement for federal workers and left the choice between them to the claimant. On the one hand, a federal employee may invoke the EEOC's administrative process and thereafter file suit if he or she is dissatisfied with the administrative outcome. See id. § 633a(b)-(c); see also Stevens v. Dep't of Treasury, 500 U.S. 1, 5 (1991). On the other hand, a federal employee may bypass the administrative process altogether and file a civil action directly in the federal district court. See 29 U.S.C. § 633a(c)-(d); see also Stevens, 500 U.S. at 6. In that event, the only preconditions are (i) that "no civil action may be commenced by any individual under this section until the individual has given the [EEOC] not less than thirty days' notice of an intent to file such action," and (ii) that "[s]uch notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred." 29 U.S.C. § 633a(d); see Stevens, 500 U.S. at 6-7 (reaffirming these preconditions).

The bottom line is that the hand-painted section of the ADEA limning the rights of federal employees contains no express

-8-

statute of limitations.  Indeed, that section says nothing about the outside date for the filing of suit (regardless of whether an employee has elected to undergo or to bypass the administrative process).  Courts have been left to intuit the rules of timeliness applicable to such ADEA actions, and those rules must be borrowed from an exogenous source.  See Stevens, 500 U.S. at 7.  Devising an appropriate limitations period is rarely easy — and here, the duality of the means of enforcement exacerbates the difficulty of the task.

## B.

## ADEA Bypass Actions:  Why Title VII's Limitations

## Period Does Not Fit

The borrowing equation differs in each of the two configurations that Congress has provided.  In cases in which a federal employee opts for the administrative process, courts — including this one — have most often agreed that the Title VII limitations period is the most analogous and, therefore, have elected to import it.  See, e.g., Burzynski v. Cohen, 264 F.3d 611, 619 (6th Cir. 2001); Jones v. Runyon, 32 F.3d 1454, 1456 (10th Cir. 1994); Long v. Frank, 22 F.3d 54, 56 (2d Cir. 1994); Lavery, 918 F.2d at 1027.  But see Lubniewski v. Lehman, 891 F.2d 216, 221 (9th Cir. 1989) (applying six-year limitations period borrowed from 28 U.S.C. § 2401(a)).  This importation makes good sense because when a federal employee elects to enter the administrative process, the

ADEA and Title VII enforcement schemes are homologous. Moreover, in such a situation the federal employee is pursuing essentially the same route that Congress has prescribed for non-federal employees, and, thus, there is every reason to borrow a compatible rule of timeliness.

This relatively straightforward answer does not resolve the materially different question of where to derive an appropriate rule of timeliness when a federal employee elects to bypass the administrative process and file an ADEA suit directly in the district court.[2] In that situation, Stevens forecloses the importation of Title VII's limitations period. We explain briefly.

In Stevens, the Supreme Court observed that the statutory provision authorizing the bypass option, 29 U.S.C. § 633a(d), "calls for a notice of not less than 30 days to the [EEOC] of an intent to sue," and "that the notice shall be filed with the [EEOC] within 180 days of the alleged unlawful practice." 500 U.S. at 6.

---

[2]Lavery does not assist in answering this question. Although we held there that Title VII's statute of limitations should be applied to ADEA actions against federal employers, the case involved an employee who had elected to undergo the administrative process. See Lavery, 918 F.2d at 1022-23 ("We are asked to decide . . . what period of limitations following a final agency decision applies to an action alleging age discrimination brought by a federal employee pursuant to the [ADEA].") (emphasis supplied). In all events, the Supreme Court decided Stevens after Lavery, and the rationale of Stevens precludes us from applying Lavery to bypass cases. See text infra. By like token, Stevens effectively abrogated our earlier decision in Castro v. United States, 775 F.2d 399, 403 (1st Cir. 1985) (per curiam), insofar as that decision pertains to the interpretation of the ADEA's temporal requirements. See Stevens, 500 U.S. at 7.

Finding these two requirements satisfied, the Court asked whether there were any other bases upon which the suit could be considered time-barred. Id. at 7. Noting that the "statute does not expressly impose any additional limitations period for a complaint of age discrimination," the Justices concluded that Congress intended that an appropriate limitations period should be borrowed from state or federal law. Id. Although poised to decide which rule of timeliness should be borrowed for use in connection with 29 U.S.C. § 633a(c)-(d), the Court refrained from making that decision. It explained that there was no need to decide the question because Stevens had filed his suit one year and six days after the allegedly discriminatory event — an interval that was "well within whatever statute of limitations might apply to the action." Id. at 8 (quoting respondents' brief).

We think that this decision can only be read as a definitive rejection of the importation of Title VII's limitations period into the framework established by 29 U.S.C. § 633a(c)-(d). We base this conclusion on two principal lines of reasoning. First, the entire focus of the Stevens Court's inquiry was on the date of the alleged discrimination as the accrual date for limitations purposes. Under Title VII, the relevant date would have borne some relation to final agency action, or at least to the expiration of the 30-day notice period.

Second — and perhaps more important — if Title VII's temporal requirements were to be applied to bypass actions, Stevens's claim would have been time-barred. Stevens served a notice of intent to sue on October 19, 1987, and filed suit on May 3, 1988. Stevens, 500 U.S. at 4. Were Title VII to be the source of the borrowing, a federal employee who elected to bypass the administrative process would have no more than 120 days from the filing of his notice within which to commence a civil action. See Edwards, 64 F.3d at 605-06 (finding that Title VII's limitations period would begin to run no later than the expiration of the 30-day waiting period following the filing of a notice of intent to sue); Rossiter, 257 F. Supp. 2d at 445 (same). Since Stevens started suit more than 120 days after he filed his notice of intent to sue, the Supreme Court could not have found his suit timely unless it rejected the proposed incorporation of Title VII's limitations period into the ADEA's bypass scheme.

To be sure, the government resists this conclusion. It suggests that the Court's comment — that Stevens's suit had been brought "well within whatever statute of limitations might apply," 500 U.S. at 8 — was mere dictum and that, in all events, the point was never fully litigated. We reject these importunings.

First and foremost, when a statement in a judicial decision is essential to the result reached in the case, it becomes part of the court's holding. See Seminole Tribe v. Florida, 517

-12-

U.S. 44, 66-67 (1996) (defining as binding both the court's result and "those portions of the opinion necessary to that result"). Consequently, the Stevens Court's statement was not dictum.[3]

We also dismiss the government's attempt to sidestep Stevens on the basis that the statute of limitations issue was never fully litigated. That asseveration depends on the premise that the Court's statement that Stevens's suit had been brought "well within whatever statute of limitations might apply to the action," 500 U.S. at 8, was merely a recitation of the government's concession. That premise is faulty. Although the government accepted Stevens's position on the question, the Supreme Court did not stop there but chose to decide the issue, recognizing that a final determination was essential to the outcome of the litigation.[4]  See 500 U.S. at 7-8.  In other words, the Supreme Court resolved that the limitations issue was properly before it — and we decline to second-guess the legal effect of that resolution.

---

[3]We hasten to add that even if one were to categorize the Court's statement as dictum — a proposition to which we do not subscribe — that categorization would not shift our view.  See McCoy v. MIT, 950 F.2d 13, 19 (1st Cir. 1991) (concluding that "federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when . . . a dictum is of recent vintage and not enfeebled by any subsequent statement").

[4]In point of fact, the government's only ground of opposition in Stevens was that the Court should not hear the case, and, thus, the Court's choice to decide the merits is telling.

If more were needed — and we doubt that it is — sound policy considerations support the result reached by the <u>Stevens</u> Court. Title VII's limitations period is entirely derivative of, and dictated by, the administrative process. The limitations period begins to run upon final agency action. The bypass procedure, however, is a horse of a vastly different hue. <u>See</u> <u>Burnett</u> v. <u>Grattan</u>, 468 U.S. 42, 50-51 (1984) (discussing how going through an administrative process differs from filing a claim directly in court and noting, inter alia, that borrowing an administrative statute of limitations for use in the latter situation ignores the congressional determination that the claim belongs in court). Because bypass actions involve no final agency action, it would be anomalous to impress them with a Title VII-like rule of timeliness.

The government attempts to parry this thrust by noting that the EEOC must receive notice of a federal employee's intent to sue in a bypass case. That is indisputably true, <u>see</u> 29 U.S.C. § 633a(d), but it is beside the point. This notice is a one-time event that bears no real resemblance to the processing and resolution of an administrative complaint. In a traditional ADEA case, the administrative process, once begun, takes center stage until an administrative outcome is reached. By that time, the case is likely to be fully developed. Permitting a short window of opportunity within which to file suit makes sense when that window

-14-

follows a final agency determination. In that context, the short window of time is actually more like a right to appeal than a statute of limitations — and rights of appeal often have a severely limited shelf life. See, e.g., 28 U.S.C. § 2107(a) (delineating a 30-day appeal period); Sup. Ct. R. 13 (requiring petitions for certiorari to be filed within 90 days after judgment); Fed. R. Bankr. P. 8002 (requiring generally that a notice of appeal be filed within ten days of a bankruptcy court order). Moreover, the administrative process is often lengthy and, thus, starting the limitations period from the date of injury would run the risk of allowing the expiration of the time for suit despite best efforts on the employee's part.

These justifications are utterly absent in ADEA bypass cases. There is no required agency action and no persuasive rationale for linking a rule of timeliness to the time of agency notification. Viewed holistically, bypass cases are more like traditional civil suits, in which limitations periods begin to run at the time of the injury. We think it is hardly coincidental that this is the precise locus on which the Stevens Court focused.

Edwards does not persuade us to the opposite view. There, a panel of the Eleventh Circuit ruled that the applicable limitations period for ADEA actions brought pursuant to section 633a(c)-(d) should be imported from Title VII. Edwards, 64 F.3d at 606. Although the panel paid lip service to Stevens, it nowhere

-15-

explained how the result that it reached was permissible under Stevens. Because we do not see any principled way to square Edwards with Stevens, we regard the Edwards decision as fundamentally flawed and respectfully decline to follow it.[5]

## C.

### ADEA Bypass Actions: What Limitations Period Should Apply

Having determined that Title VII does not furnish the applicable rule of timeliness for ADEA bypass actions, we are left with the question of what limitations period should apply. The inquiry that we must undertake requires us to determine, first, whether a federal or state rule of timeliness should be imported. See Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 147 (1987). Given both the longstanding practice of borrowing state periods of limitations when federal rights-creating statutes contain no built-in timeliness rules and Congress's awareness of that practice, courts ought generally to assume that Congress intends by its silence that state law be borrowed. Id. But this is a default rule — a "fallback rule of thumb," DelCostello, 462 U.S. at 158 n.12 — not a hard-and-fast mandate. See Communications

---

[5]Without exception, the cases cited by the Edwards court in support of importing Title VII's limitations period into the framework of section 633a(c)-(d) are inapposite. All of them involve federal employees who opted to undergo the administrative process. See, e.g., Jones, 32 F.3d at 1455; Long, 22 F.3d at 55-56; Lavery, 918 F.2d at 1023. As we explained above, the limitations period applicable to "administrative process" cases simply cannot be transplanted blindly into the bypass scheme.

<u>Workers of Am.</u> v. <u>Western Elec. Co.</u>, 860 F.2d 1137, 1139 (1st Cir. 1988) (explaining that "the glance in the direction of the state-law cupboard should not be an automatic or reflexive one"). That default rule must give way "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." <u>Del Costello</u>, 462 U.S. at 172; <u>accord</u> <u>Agency Holding Corp.</u>, 483 U.S. at 147-48. This is such a case.

The closest analogy to an ADEA bypass action logically is to be found in anti-discrimination or employment legislation. Although there are a myriad of federal statutes that fall under those rubrics, most of them require exhaustion of an administrative process as a precondition to court action. <u>See</u>, <u>e.g.</u>, 42 U.S.C. § 2000e-5(e)(1) & (f)(1) (Title VII); <u>id.</u> § 12117 (Americans with Disabilities Act). This renders their rules of timeliness useless for our purpose: after all, the search for the most analogous rule of timeliness places a high premium on both parallel enforcement structures and congruent statutory goals. <u>See</u> <u>Burnett</u>, 468 U.S. at 49-50. The same disqualifier negates the possible use of a network of state anti-discrimination statutes as a source for borrowed rules of timeliness. <u>See</u> <u>id.</u> at 51 (noting that "some 30 states" have administrative remedies modeled after Title VII).

Of course, analogies need not be "perfect," Agency Holding Corp., 483 U.S. at 147, and the search for an appropriate state-law analogue leads naturally to a consideration of rules of timeliness generally applicable to claims for personal injury. On reflection, however, this seems an unsatisfactory alternative. One concern is that these statutes tend to be very general and, thus, furnish only a loose fit for ADEA bypass actions. Another concern arises out of the existence and availability of a more sharply focused federal analogue.[6] See Norman J. Singer, Statutes and Statutory Construction 702 (2003 rev. ed.) ("When two or more statutes of limitations deal with the same subject matter, the statute which is more recent and specific will prevail over the older and more general one.").

Our chief concern, however, is that the importation of state rules of timeliness into the framework established for ADEA bypass actions would "frustrate or interfere with the implementation of national policies." Occidental Life Ins. Co. v. EEOC, 432 U.S. 355, 367 (1977). That concern reflects two basic premises. First, because section 633a applies only to federal employers, the interest in uniformity is manifest. We think that this interest matters. See Board of Regents v. Tomanio, 446 U.S.

---

[6]Although not dispositive, we find it compelling that not one court of appeals to have considered what limitations period to borrow in an ADEA action against a federal employer has imported a state rule of decision. See, e.g., Jones, 32 F.3d at 1455; Lavery, 918 F.2d at 1025.

478, 489 (1980) (observing that uniformity is "a federal policy which sometimes necessitates the displacement of an otherwise applicable state rule of law"); see also Carlson v. Green, 446 U.S. 14, 23-24 (1980) (creating a federal common law of survivorship rights for use in actions brought under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), based on the need for uniformity and noting that "uniformity cannot be achieved if courts are limited to . . . state law").[7]

Courts might have to swallow hard and tolerate these several concerns if state law were the only source reasonably available for borrowing. DelCostello, 462 U.S. at 169. Here, however, that is not the case. Having considered and discarded the full range of alternatives, we believe that the FLSA, a federal statute, offers the closest analogy to ADEA bypass actions (and,

---

[7]We note that courts generally have applied state statutes of limitations to Bivens actions notwithstanding the fact that such actions lie only against federal officers. See, e.g., Polanco v. U.S. DEA, 158 F.3d 647, 653 (2d Cir. 1998); Delgado-Brunet v. Clark, 93 F.3d 339, 342 (7th Cir. 1996); Matthews v. Macanas, 990 F.2d 467, 468 (9th Cir. 1993). But ADEA bypass actions are distinguishable from Bivens actions for a variety of reasons. First, the ADEA has been interpreted to preempt state causes of action for age discrimination in employment. See, e.g., Britt v. Grocers Supply Co., 978 F.2d 1441, 1448 (5th Cir. 1992). We believe that this fact evinces Congress's preference for uniformity of application. Second, Bivens is a court-created remedy that serves as an analogue to 42 U.S.C. § 1983. It would make little sense to apply different limitations periods to section 1983 claims and Bivens claims, both of which are "constitutional tort" actions that allow vindication of personal interests. See Polanco, 158 F.3d at 653.

thus, constitutes the most appropriate source for borrowing a rule of timeliness).

The FLSA's goals are congruent with the ADEA's: like the ADEA, the FLSA was designed to protect individual workers. See Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981). The FLSA's enforcement mechanism also parallels the enforcement mechanism characteristic of ADEA bypass actions, that is, it creates private rights of action that do not depend upon a regime of administrative enforcement. See, e.g., 29 U.S.C. § 216(b). Moreover, the FLSA's limitations period is designed to accommodate a balance of interests similar to those at stake in ADEA bypass actions. The importance of this fact is obvious. See DelCostello, 462 U.S. at 169. And, finally, we deem it significant that the very act that expanded the ADEA to include federal employees was cast in the form of an amendment to the FLSA. These considerations lead us to conclude that borrowing a rule of timeliness from the FLSA is the preferred course — and one that is entirely consistent with the congressional design.

To cinch matters, sound policy also supports resort to the FLSA's limitations period. A two-year statute of limitations[8]

---

[8]In point of fact, the FLSA has a bifurcated limitations period. The basic period is two years. 29 U.S.C. § 255(a). This period can, however, be extended for an additional year if the cause of action arises out of a willful violation. Id. The case at bar does not require us to decide when, if ever, the latter period might apply in an ADEA bypass action.

in no way undermines the salient interests served by timeliness rules in federal anti-discrimination laws, which are meant to "protect employers from the burden of defending claims arising from employment decisions that are long past." Delaware State Coll. v. Ricks, 449 U.S. 250, 256-57 (1980). In a bypass case, a federal employee must give notice of intent to sue within 180 days of the allegedly discriminatory act or practice, 29 U.S.C. § 633a(d), and the federal employer thus will have an opportunity to investigate the claim and preserve relevant records. We hold, therefore, that the FLSA's rule of timeliness, 29 U.S.C. § 255(a), is the correct rule of timeliness to apply to ADEA actions in which a federal employee has elected to bypass the administrative process.

There is one loose end. As the government reminds us, 29 U.S.C. § 633a(f) says that personnel actions of any federal employer to which section 633a applies should not be "subject to, or affected by, any provision of this chapter." This is a potential obstacle to our holding because, at the time that section 633a(f) was added, see Pub. L. No. 95-256, § 5(e), 92 Stat. 191 (1978), the FLSA's limitations period applied, by statute, to the mine-run of ADEA cases, see 29 U.S.C. § 626(e) (amended 1991). With this in mind, the suggestion is that section 633a(f) should be construed to preclude application of the FLSA's rule of timeliness.

This reasoning is both convoluted and disingenuous. Although it is true that section 633a(f) makes clear that federal

-21-

employers are only bound by the specific provisions of section 633a, looking to the FLSA to borrow a rule of timeliness in no way compromises that principle. The FLSA's statute of limitations is no longer applicable to ADEA litigation involving private employers. Consequently, our choice to import the FLSA's timeliness rule into the framework of ADEA bypass actions does not implicate any other provision of the ADEA. We merely refer to an analogous statutory scheme to fill a void that must be filled (i.e., to determine the appropriate limitations period for use in bypass actions). This is an exercise in statutory interpretation, not an application of forbidden provisions to the case at hand. In the last analysis, then, section 633a(f) has no bearing on our importation decision.

## III.

### Conclusion

We need go no further. To reiterate, we hold that the correct rule of timeliness to be used in conjunction with bypass actions brought under 29 U.S.C. § 633a is the FLSA's limitations period. Applying this rule to Rossiter's ADEA claim, we find that his suit — filed one year and ten months after the occurrence of the allegedly discriminatory act — is timely. See Ricks, 449 U.S. at 258-59 (holding that the appropriate focus in determining the starting point of a limitations period in an employment discrimination action is the communication of the allegedly

discriminatory decision); <u>Morris</u> v. <u>Gov't Dev. Bank</u>, 27 F.3d 746, 749-50 (1st Cir. 1994) (explaining that the limitations period begins to run when the claimant receives notice of the discriminatory act).  The district court erred in concluding otherwise and in dismissing Rossiter's action as time-barred. Accordingly, we reverse the order of dismissal and remand for further proceedings consistent with this opinion.

**<u>Reversed and remanded</u>**.